# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**RONDA DEPRIEST**                                                             **PLAINTIFF**

**v.**                      **Case No. 4:12-cv-00235 KGB**
                            **Case No. 4:14-cv-00037 KGB**

**DENNIS MILLIGAN**                                                            **DEFENDANT**

### OPINION AND ORDER

Before the Court is defendant Dennis Milligan's second motion for summary judgment (Dkt. No. 85).[1]  Plaintiff Ronda DePriest has responded to the motion (Dkt. No. 93), and Mr. Milligan has replied (Dkt. No. 100).  Mr. Milligan also filed a motion for extension of time to file remaining pre-trial documents (Dkt. No. 99), to which Ms. DePriest responded in opposition (Dkt. No. 101).

For the following reasons, the Court grants Mr. Milligan's second motion for summary judgment (Dkt. No. 85) as to Ms. DePriest's claims of gender discrimination under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1963 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Government Employee Rights Act of 1991 ("GERA"), 42 U.S.C. §§ 2000e(f), 2000e-16c; and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq*., based on Ms. DePriest's non-retention as chief deputy.  The Court also grants Mr. Milligan's motion for summary judgment as to any discrimination or retaliation claim premised on the allegation that Ms. DePriest should have been allowed the opportunity to take another position for which she did not apply.  The Court denies Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims alleging a violation of her right to remonstrate under the Arkansas Constitution

---

[1]  Unless otherwise noted, citations to the record are cites to the lead case, Case No. 4:12-cv-235.

(Dkt. No. 85); nevertheless, the Court declines to exercise supplemental jurisdiction over and, therefore, dismisses without prejudice those claims. The Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims of retaliation under the First Amendment and § 1983, Title VII, and the ACRA for failing to hire her for the electronic filing coordinator and real estate clerk positions. The Court denies as moot Mr. Milligan's motion for extension of time to file remaining pre-trial documents (Dkt. No. 99).

## I.     Factual Background

This action involves two consolidated lawsuits that Ms. DePriest has filed against Mr. Milligan. Ms. DePriest filed her original complaint against Mr. Milligan in Saline County, Arkansas, Circuit Court in April 2012. Mr. Milligan removed the action to this Court, Case No. 4:12-cv-00235 KGB ("Lawsuit I"). In her first lawsuit, Ms. DePriest claimed that Mr. Milligan discriminated against her in violation of § 1983, Title VII, the GERA, and the ACRA when he decided not to retain her as his chief deputy, when she was not allowed the opportunity to take another position, and when a position was filled with another candidate in June 2011. Ms. DePriest also alleged in her first lawsuit that Mr. Milligan retaliated against her in violation of the First Amendment of the United States Constitution and in violation of her right to remonstrate under the Arkansas Constitution. On September 30, 2013, this Court granted Mr. Milligan's first motion for summary judgment as to Ms. DePriest's First Amendment claims (Dkt. No. 75). The Court also granted Mr. Milligan's motion for summary judgment as to Ms. DePriest's right to remonstrate claim against Mr. Milligan in his individual capacity. The Court denied without prejudice Mr. Milligan's motion for summary judgment as to Ms. DePriest's gender discrimination claims and granted Ms. DePriest's motion to stay the action for further proceedings consistent with the GERA.

While her first lawsuit remained pending, Ms. DePriest filed a second action against Mr. Milligan, Case No. 4:14-cv-00037 KGB ("Lawsuit II"), which this Court consolidated with her first action by Order dated July 17, 2014 (Dkt. No. 81).   In her second lawsuit, Ms. DePriest alleged separate violations of the First Amendment, Title VII, § 1983, and the ACRA.   Before analyzing her claims, the Court will review the factual background of each of Ms. DePriest's actions.

## A.       Background Of Lawsuit I

Dennis Milligan, a Republican, ran for Saline County Circuit Clerk in 2010 and won.   He opposed the long-time incumbent clerk, Doug Kidd, a Democrat.   Ms. DePriest was an at-will employee serving as chief deputy under Mr. Kidd's administration.   Mr. Milligan states that he did not know Ms. DePriest when he was elected.   Ms. DePriest admits that she had not met Mr. Milligan before he was elected but denies that Mr. Milligan did not know who she was (Dkt. No. 94-1, ¶ 5).   Prior to assuming office on January 1, 2011, Mr. Milligan notified Ms. DePriest that she would not be retained as chief deputy in his administration.   Although Ms. DePriest does not dispute this, she contends that she would have stepped down to a lower position to remain an employee and not to lose her seniority, sick leave, and vacation leave.   She alleges that she was not retained because she supported Mr. Milligan's opponent in the campaign and because she is a woman (Dkt. No. 94-1, ¶ 10).   She contends that Mr. Milligan fired her because of comments she had made on Facebook (*Id.*).   Mr. Milligan disputes this.

After being elected, Mr. Milligan hired a person of his choosing, Jim Harris, to be his chief-of-staff.   Ms. DePriest claims that Mr. Harris had no prior experience in running the Saline County Circuit Clerk's office.   Mr. Milligan claims he hired the individual he felt would best help him fulfill the promises that he made to the citizens of Saline County.   Mr. Milligan claims

that he chose not to reappoint Ms. DePriest as the chief deputy because he viewed the position as one that requires political loyalty.  Ms. DePriest disputes that the chief deputy position requires political loyalty (Dkt. No. 94-1, ¶ 10).

Ms. DePriest contends that Mr. Milligan did not hire her because she is female and supported Mr. Kidd.  During discovery in her first lawsuit, Ms. DePriest testified in her deposition that she never called Mr. Milligan and asked him if he would hire her back in some other position.  To Mr. Harris's knowledge, Ms. DePriest had not applied for any other job at the Saline County Circuit Clerk's office between December 2010 and June 2013.  Although she admitted this, Ms. DePriest previously argued that applying would have been futile because Mr. Milligan would not have hired her (Dkt. No. 50-1, ¶13).  Ms. DePriest contends that, at the time she was terminated, she was not interviewed or allowed to apply for any other positions in the Saline County Circuit Clerk's office.  She maintains that, had she been allowed to do so, she would have continued working there.

In 2011, the Saline County Circuit Clerk's office had open the position of electronic records manager.  Mr. Milligan states that this opening "was posted from June 30, 2011 through July 7, 2011" (Dkt. No. 87, at 5).  In support of this contention, Mr. Milligan attaches an affidavit from Christy Peterson, the county personnel manager (Dkt. No. 86-5).  Ms. Peterson states that the position was posted on those dates.  Ms. Peterson's affidavit also includes several exhibits, including a notice of job opening and a job description for the electronic records manager position, a list of people who applied for the position, and the application of Gary Underwood, who ultimately was hired for the position  (*Id.*).  Mr. Milligan contends that Ms. Peterson's affidavit "establishes the position was posted from June 30, 2011 to July 7, 2011, that nine people applied, that Underwood was one of the nine applicants, that DePriest did not apply,

and that Underwood was hired following the application period" (Dkt. No. 100, at 2). Ms. DePriest admits that she did not apply for this position but disputes that the position was posted. Ms. DePriest states that "she watched for a posting on the internet of that position, and it was not posted" (Dkt. No. 94-1, ¶ 12). She contends that she had previously performed all aspects of that job.

According to Mr. Milligan, when a full-time position is open, Ms. Peterson posts the position, collects applications, and forwards the applications to the hiring authority to review and schedule interviews with the candidates. Ms. DePriest admits that this is the usual process but denies that the office followed this process for the electronic records manager position. Mr. Milligan states that part-time positions may or may not be posted. Mr. Milligan explained that he tells Ms. Peterson what the job is and follows her recommendation regarding whether to advertise or not. Ms. DePriest disputes this, claiming that "[d]uring her 19 years in the Chief Deputy position, part time positions were posted" (Dkt. No. 94-1, ¶ 16).

At the end of 2010, all of the employees in the Saline County Circuit Clerk's office were women. Mr. Milligan maintains that he does not consider race or gender in his hiring decisions; Ms. DePriest disputes this (Dkt. No. 94-1, ¶18).

Mr. Milligan states that Mr. Harris's duties include helping Mr. Milligan write speeches that Mr. Milligan has to deliver and acting as Mr. Milligan's "overall ambassador" in the community. When Mr. Harris is off the clock, he attends political events for Mr. Milligan and promotes changes that Mr. Milligan has made in the Saline County Circuit Clerk's office. Mr. Milligan consults with Mr. Harris regarding political matters and values Mr. Harris's political insight and counsel, based on Mr. Harris's experience in the political arena. Mr. Harris also advises Mr. Milligan on hiring, firing, and disciplining employees. Mr. Harris interviews

potential staff members during the hiring process.  Mr. Milligan has designated Mr. Harris as his representative to attend meetings on his behalf sponsored by the Arkansas Association of Counties, the Arkansas Circuit Clerk's Association, and the Administrative Office of the Courts. Mr. Harris is Mr. Milligan's primary contact with other constitutional offices in the state, including the Governor's Office, the State Auditor, the State Treasurer, the State Land Commissioner, and all state agencies that interact with the Circuit Clerk's office.  Mr. Milligan also has appointed Mr. Harris as his liaison with the press, and Mr. Harris, at Mr. Milligan's direction, prepares press releases regarding Mr. Milligan's accomplishments of his campaign pledges and of changes, developments, and improvements within the Circuit Clerk's office.  Ms. DePriest denies that any of these duties were a part of her job when she served as the chief deputy (Dkt. No. 94-1, ¶¶ 20-25).

Mr. Milligan also states that Mr. Harris handles any special projects that Mr. Milligan assigns to him.  Mr. Harris's everyday responsibilities include dealing with any customer complaints, managing the office staff, and generally overseeing the Circuit Clerk's office.  Mr. Harris claims that he is totally responsible for the day-to-day operations of the office.  Mr. Harris continues to perform other daily tasks such as making deposits, handling payroll, managing personnel records, and dealing with employee leave.  Ms. DePriest admits that she performed these duties (Dkt. No. 94-1, ¶¶ 26-29), but she denies that Mr. Harris completed these everyday responsibilities upon taking the position because, as she states, Mr. Harris "had no training or experience to run the office" (Dkt. No. 94-1, ¶ ¶ 27-29).  Ms. DePriest also states that there was another chief deputy who, along with Mr. Kidd, took part in the day-to-day operations of the office (Dkt. No. 94-1, ¶ 28).  The other chief deputy was retained by Mr. Milligan when he took

office (Dkt. No. 93-3, at 3).  Mr. Milligan claims that he expects Mr. Harris to do whatever he demands or needs from him, 24 hours a day.

Mr. Milligan contends that he appointed Mr. Harris because he knew Mr. Harris personally and wanted someone he could trust to act on his behalf in his absence.  Ms. DePriest denies that the position she held was a position of "trust" (Dkt. No. 94-1, ¶ 31).  She contends that Mr. Milligan hired Mr. Harris "because of political support and because of his gender" (*Id.*).

On December 30, 2010, Mr. Milligan received an email that included an attached Facebook post and several comments to that post.  The Facebook post cites to the local newspaper the *Benton Courier* and states, "Milligan dismisses four in clerk's office" (Dkt. No. 93-2, at 19).  In the comments to the post, one Facebook user states, "You should be ashamed if you voted for him" (*Id.* at 20).  Referring to this user by name, a post from an account attributed to "Ronda Hester DePriest" states, "[N]o doubt . . . Im [sic] much better off though!!! would not want to work for that!" (*Id.*).

On November 19, 2012, Ms. DePriest's counsel, Luther Sutter, deposed Mr. Milligan.  Mr. Sutter asked Mr. Milligan if he would "consider [Ms. DePriest] for any position whatsoever," and Mr. Milligan responded "[n]o" (Dkt. No. 86-3, at 70).  When asked by Mr. Sutter why he "would never hire Ronda DePriest," Mr. Milligan stated, "That's just my right, sir, as an elected official" (*Id.* at 75).  Mr. Milligan said he did not need a reason for not considering Ms. DePriest (*Id.* at 70).  Mr. Sutter asked Mr. Milligan, "[W]hat is it about Ronda DePriest and my representation and this situation that—that says—that gives you cause or reason to say you would never hire her?" (*Id.* at 77).  Mr. Milligan responded, "I just—I don't think we would work out well together. . . .  I have—I reserve the right to not hire her. I didn't hire her. I'm not

going to hire her" (*Id.*).  When Mr. Sutter asked if Mr. Milligan would hire Ms. DePriest "even if she applied [for a job]," Mr. Milligan stated, "No, sir" (*Id.* at 78).

Nonetheless, in other parts of the deposition, when Mr. Sutter asked Mr. Milligan "would things be different if Ms. DePriest had not brought this lawsuit," Mr. Milligan responded "[n]o" (*Id.* at 70).  Mr. Sutter also asked if Mr. Milligan "recognize[d] that every citizen has the right to be considered equally," to which Mr. Milligan responded "[s]ure" (*Id.* at 71).  Mr. Sutter asked Mr. Milligan, "But with Ms. DePriest's application, you would look at her application if it met the minimum qualifications.  You would see her name, and then you would immediately disregard her for any position?" (*Id.* at 73).  Mr. Milligan stated, "No, no. You said, sir, your words were 'Would I consider'; and I would consider and then move on" (*Id.*).

Ms. DePriest filed a charge with the Equal Employment Opportunity Commission ("EEOC") prior to filing her first lawsuit against Mr. Milligan.  The right-to-sue letter Ms. DePriest received from the EEOC states:  "The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge."  (Dkt. No. 52-5).

By previous order, this Court stayed Ms. DePriest's gender discrimination claims "pending further action by the EEOC consistent with the GERA" (Dkt. No. 75, at 10).  Ms. DePriest requested that the EEOC reconsider her GERA claim.  By letter dated December 19, 2013, the Director for the EEOC's Memphis District Office denied Ms. DePriest's request for reconsideration, specifically noting that Ms. DePriest was interviewed and provided information regarding "duties she performed" and "responsibilities of the position of Chief Deputy Circuit

Clerk" before concluding that there was "no persuasive reason to reconsider the determination" that Ms. DePriest "did not meet the criteria for coverage under the GERA" (Dkt. Nos. 76-1, 94-1, ¶ 43).

**B.**     **Background Of Lawsuit II**

In August 2013, Ms. Peterson posted the opening of the electronic filing coordinator position. This position's opening was posted from August 16, 2013, through August 22, 2013. Ms. Peterson received 25 applications, which included applications from 24 females and one male. Ms. Peterson forwarded the applications to Mr. Milligan. Ms. DePriest applied for the electronic filing coordinator position on August 19, 2013. Ms. DePriest listed Doug Kidd, the previous Circuit Clerk and Mr. Milligan's 2010 election opponent, as a reference on her application. Ms. DePriest also listed Curtis Ferguson and Judge Gary Arnold as references.

Mr. Milligan contends that, when Mr. Harris contacted Mr. Ferguson and Judge Arnold, both of them indicated that they did not know Ms. DePriest had listed used them as references. Ms. DePriest objects to this contention as hearsay and states that she listed Judge Arnold because she had worked in the clerk's office for years and because he had been a judge there for years (Dkt. No. 94-1 ¶ 56). She states that she saw Judge Arnold regularly in the course of doing her job and that, when she was not retained as the chief deputy, Judge Arnold told her that she could use him as a reference (*Id.*). Ms. DePriest states that she has known Mr. Ferguson for 20 years (*Id.*). She contends that the reference sheet did not require her to tell someone they would be used as a reference and that Mr. Ferguson "told them they would be stupid not to hire [her]" (Dkt. No. 94-1, ¶ 56).

Kami Garrett also applied for the electronic filing coordinator position on August 19, 2013, and Charlotte Roberts submitted a letter of intent regarding the position on August 20,

2013.   Ms. DePriest was one of three applicants who interviewed for the electronic filing coordinator position.   Mr. Milligan and Mr. Harris interviewed Ms. DePriest on or around August 23, 2013.  Ms. DePriest has provided Mr. Milligan with a recording of this interview.

Mr. Milligan states that, at the beginning of the interview, Ms. DePriest refused to shake hands with him and Mr. Harris.  Ms. DePriest denies that she refused to shake their hands (Dkt. No. 94-1, ¶ 62).  Ms. DePriest states that she would have shaken their hands if they were willing, but when she came into the room, Mr. Milligan was sitting behind his desk and that she was seated across from Mr. Milligan, whose desk is wide (*Id.*).  She claims that "[t]o shake hands, he would have had to rise and bend across [his desk], or move around.  He did neither" (*Id.*).  Ms. DePriest states that the "only alternative would have been for her to walk around the desk and invade his space to shake hands, which would not be appropriate" (*Id.*).  She claims that Mr. Milligan did not ask to shake hands or act like he wanted to shake hands and that Mr. Harris did not put his hand out, ask to shake, or make a gesture as though he wanted to shake hands.

According to Mr. Harris, Ms. DePriest had a sour look on her face during the interview and did not seem like she wanted to be there.  Ms. DePriest denies this and claims that she was "pleasant" (Dkt. No. 94-1, ¶ 63).  During the interview, Mr. Milligan asked Ms. DePriest if she filled out her application truthfully, and Ms. DePriest responded that she did.  Mr. Milligan states that he asked this question because Ms. DePriest's application stated that she was "terminated [from her previous employment with the Circuit Clerk's office] because [she] posted on Facebook" (Dkt. No. 94-1, ¶ 66).  Mr. Milligan believes this statement is untrue because Ms. DePriest did not post anything relevant on Facebook until after she had received the letter informing her that she would not be reappointed.  Ms. DePriest disputes that this portion of her application was false, claiming that she posted material on Facebook in support of Mr. Kidd and

that Mr. Milligan gave this as a reason for not retaining her as chief deputy (Dkt. No. 94-1, ¶¶ 66-67).

Mr. Milligan states that when he took office, he began implementing technological improvements around the office and that one of his goals was to make public records filed in the office more available on the internet.  He states that the electronic filing coordinator had to use the programs CourtConnect and Contexte, which Ms. DePriest admits (Dkt. No. 94-1, ¶ 48). CourtConnect is a portal to public case information for courts using the ACS Contexte case management system.  Although she admits that technological improvements occurred in the Circuit Clerk's office and that one of Mr. Milligan's goals was to make public records more available, Ms. DePriest contends that these improvements were "done by the AOC" and that these goals were "already set by the judicial system, and [were] going to happen no matter what" (Dkt. No. 94-1, ¶¶ 44-45).

Ms. DePriest admitted during her interview for the electronic filing coordinator position that she had not been trained to use CourtConnect or Contexte.  Although she admits this, she nonetheless contends that she stated during the interview she could learn and was a quick learner. Ms. DePriest acknowledges that Contexte was introduced to the office after she left and that she would have to learn the system.

Ms. Roberts and Ms. Garrett were the other two applicants who interviewed for the electronic filing coordinator position.  During Ms. Roberts's interview, she volunteered to go to Pulaski County to learn how the Circuit Clerk's office in that county performs e-filing, which illustrated to Mr. Harris that Ms. Roberts was thinking about how improvements could be made in the office in the future.  Ms. Roberts and Ms. Garrett were trained on CourtConnect and

Contexte.  At the time, Ms. Roberts was already employed in the Circuit Clerk's office as the real estate clerk.

Mr. Milligan states that his usual practice is to fill open positions with current employees, if they are interested in the position and qualified.  Ms. DePriest denies this contention, stating that he hired a number of people "rather than keeping existing employees when he came in" (Dkt. No. 94-1, ¶ 74).  Mr. Milligan states that Mr. Harris recommended Ms. Roberts for the electronic filing coordinator position because she was trained on CourtConnect and Contexte; was already employed in the office as the real estate clerk and was familiar with the workings of the office; and had previously been selected employee of the quarter because of her wonderful customer service skills.  Ms. DePriest denies this, stating that she "was not hired due to her protected activities and gender" (Dkt. No. 94-1, ¶ 75).

Mr. Milligan selected Ms. Roberts for the position sometime between August 23, 2013, and August 28, 2013.  Mr. Milligan states that he selected Ms. Roberts for the same reasons Mr. Harris recommended hiring her for the position.  Ms. DePriest again denies this contention and states that she was not hired because of her protected activity and gender.  At this time, the Saline County Circuit Clerk's office had not yet implemented e-filing, but during Mr. Milligan's administration, the Clerk's office attained all prerequisites for e-filing, as required by the Administrative Office of the Courts.

The position previously held by Ms. Roberts—real estate clerk—had to be filled after she was selected for the electronic filing coordinator position.  The real estate clerk position was posted from August 28, 2013, through September 4, 2013.  Ms. DePriest called Ms. Peterson and asked her to submit her August 19, 2013, application for the real estate clerk position.  Shyreen Hightower applied for the position on August 22, 2013.  Jennifer Davis submitted a letter of

intent on September 3, 2013.  Ms. Peterson received 19 applications, all of which were from females, for the real estate clerk position and forwarded those applications to Mr. Milligan.

Mr. Milligan and Mr. Harris interviewed Ms. Davis, Ms. Hightower, and Jennifer Moore. Ms. Davis was already an employee at the Circuit Clerk's office in a part-time position and had already been trained regarding CourtConnect and Contexte.  Ms. DePriest was not interviewed for the real estate clerk position.  Mr. Milligan hired Ms. Davis for the real estate clerk position.

Mr. Milligan does not believe Ms. DePriest was more qualified than Ms. Roberts or Ms. Davis because of the changes in the work of the office after Ms. DePriest left.  Mr. Milligan states that Ms. DePriest "might have some familiarity, but she admitted in her interview that she does not know the new technology and new systems that are now in place" (Dkt. No. 94-1, ¶ 90). Ms. DePriest denies this, claiming that "[s]he has run the entire office.  She has no doubt she could have learned that filing system quickly and easily.  Milligan knows this" (Dkt. No 94-1, ¶ 90).  Ms. DePriest claims that Mr. Milligan stated in his deposition that he would not hire Ms. DePriest because of her association with her attorney Luther Sutter, who represented a plaintiff in a different lawsuit against Mr. Milligan.  Ms. DePriest filed her second lawsuit against Mr. Milligan on or around January 16, 2014, based on his decision not to hire her for the open positions in August 2013.

## II.     Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

"The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).

"'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff.'" *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.    Discussion

The Court will analyze Ms. DePriest's claims asserted in each lawsuit separately.

### A.    Lawsuit I

Two claims remain from Ms. DePriest's original action challenging Mr. Milligan's decision not to retain her as chief deputy.  Ms. DePriest claims gender discrimination in violation of § 1983, Title VII, the GERA, and the ACRA.  Ms. DePriest also alleges that Mr. Milligan retaliated against her in violation of her right to remonstrate under the Arkansas Constitution.

### 1.      Gender Discrimination Claims

Ms. DePriest alleges gender discrimination.  She contends that Mr. Milligan terminated her, replaced her by a lesser qualified male, and did not permit her to reapply or be considered for open positions because of her gender in violation of the Equal Protection Clause made applicable through § 1983, Title VII, and the ACRA.  She also alleges a violation of the GERA.

### a.      Claims Under The GERA

Title VII, which covers "employees," exempts from that term "any person elected to public office . . . or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to . . . the constitutional or legal powers of the office."  42 U.S.C. § 2000e(f).  The GERA extends workplace discrimination rights to these government employees exempted by Title VII.  42 U.S.C. § 2000e-16c(a);  *Marion Cnty. Coroner's Office v. EEOC*, 612 F.3d 924, 928 n.4 (7th Cir. 2010).  The GERA states:

> The rights, protections, and remedies provided pursuant to section 2000e-16b of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof—
>
> (1) to be a member of the elected official's personal staff;
>
> (2) to serve the elected official on the policymaking level; or
>
> (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C.A. § 2000e-16c.

Ms. DePriest's claims must be brought under either Title VII or the GERA, depending on the circumstances of her employment as chief deputy at the Saline County Clerk's office.  In its September 30, 2013, order, this Court found "that the chief deputy position was a position of

trust and that, under Mr. Milligan, it became a policy-making position" (Dkt. No. 75, at 8).  The largely administrative duties that Ms. DePriest had when she was chief deputy, prior to Mr. Milligan changing the position to a policy-making position, indicate that she likely is not covered under the GERA's protections for "policymaking" positions.  Ms. DePriest was not an immediate advisor on constitutional or legal powers of the office.

This Court previously stayed all of Ms. DePriest's gender discrimination claims until Ms. DePriest's request for reconsideration was processed by the EEOC (Dkt. No. 75).  By letter dated December 19, 2013, the Director for the EEOC's Memphis District Office denied Ms. DePriest's request for reconsideration, specifically noting that Ms. DePriest was interviewed and provided information regarding "duties she performed" and "responsibilities of the position of Chief Deputy Circuit Clerk" before concluding that there was "no persuasive reason to reconsider the determination" that Ms. DePriest "did not meet the criteria for coverage under the GERA" (Dkt. No. 76-1).  The Court understands the December 19, 2013, EEOC letter to determine that the GERA does not apply to Ms. DePriest.

Even if the GERA applied to Ms. DePriest, however, this Court would not have jurisdiction over her claims brought under the statute.  The GERA provides that "[a]ny party aggrieved by a final order" of the EEOC "may obtain a review of such order under chapter 158 of Title 28." 42 U.S.C. § 2000e–16c(c).  In other words, judicial review of an EEOC's GERA order lies exclusively in a court of appeals. *Banks v. First Judicial Dist.*, 544 Fed. App'x 79 (3rd Cir. 2013); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 808 n.4 (10th Cir.2008) (same); *Crain v. Butler*, 419 F.Supp.2d 785, 788 (E.D.N.C.2005).  Thus, this court is without jurisdiction to hear Ms. DePriest's retaliation claim if it is governed by the GERA rather than Title VII. *See Crain v. Butler*, 419 F. Supp. 2d 785, 788 (E.D.N.C. 2005); *Stitz v. City of*

*Eureka Springs, Ark.*, 9 F. Supp. 2d 1046, 1056 (W.D. Ark. 1998).  Therefore, the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims under the GERA, determining that the Court lacks subject matter jurisdiction.

Notwithstanding this determination, Ms. DePriest also claims discrimination under § 1983 and the ACRA.  The ACRA does not exempt the types of government employees exempted by Title VII.  *See* Ark. Code Ann. § 16-123-102, -103.  Although courts do not agree on the interplay between § 1983 and the GERA, *compare Dyer*, 169 F. Supp. 2d at 777 (determining that the GERA is the exclusive remedy and that employees covered by the GERA have no independent § 1983 right), *with Stubblefield v. City of Jackson, Mississippi*, 871 F.Supp. 903, 911 (S.D. Miss. 1994) (determining that the GERA does not provide an exclusive remedy and examining race discrimination claims under § 1983), this Court declines to decide that issue because it determines that Ms. DePriest's gender discrimination claims fail under all laws she cites.  Because § 1983, Title VII, and the ACRA are governed by the same standards, the Court's analysis below applies to all of Ms. DePriest's gender discrimination claims arising from her non-retention as chief deputy and events in 2011.

### b.      Claims Under Section 1983, Title VII, And The ACRA

The elements of an equal protection claim alleging gender discrimination under 42 U.S.C. § 1983 are the same as those of a Title VII claim.  *See Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir. 1992); *Mercer v. City of Cedar Rapids, Iowa*, 79 F. Supp. 2d 1055, 1062 (N.D. Iowa 1999).  Further, courts apply the same standard to evaluate claims under Title VII and the ACRA.  *See, e.g.*, *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).  An employment discrimination plaintiff may survive a motion for summary judgment through "proof of 'direct evidence' of discrimination . . . . [or] through the *McDonnell*

*Douglas* analysis, including sufficient evidence of pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011); *see also McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). In this case, Ms. DePriest admits that "[t]here is not direct evidence of gender discrimination, so it is resolved under the *McDonnell Douglas* proof structure" (Dkt. No. 94, at 17).

The United States Supreme Court's decision in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), established the burden-shifting framework used to analyze employment discrimination claims. "Under this scheme, a plaintiff first must establish a prima facie case of discrimination . . . ." *Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998). To establish a *prima facie* case of discrimination under Title VII or the Equal Protection Clause, a plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently or that there are facts permitting an inference of discrimination. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012); *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 2034 (8th Cir. 2006). If the employee establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the action. *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). The plaintiff must then present facts that, if proven at trial, would permit a jury to conclude that the employer's proffered reason was a pretext and that unlawful discrimination was the true reason for the adverse employment action. *Id.*

As to Ms. DePriest's claim that Mr. Milligan discriminated against her on the basis of gender when he decided not to retain her as chief deputy, the Court will assume without deciding that Ms. DePriest has shown a *prima facie* case of gender discrimination. Nevertheless, the

Court concludes that this gender discrimination claim fails because she cannot establish that Mr. Milligan's proffered reason for not retaining her as chief deputy is a pretext for discrimination.

Mr. Milligan has the burden to articulate a legitimate, nondiscriminatory reason for not retaining Ms. DePriest. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotes omitted). At this stage and under *McDonnell Douglas*, the Court gives deference to an employer's stated reason for an adverse employment action. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 257-58 (1981).

Here, Mr. Milligan states that he hired Mr. Harris instead of not retaining Ms. DePriest because he "envisioned his second-in-command as a chief of staff and political advisor—a position of trust rather than one purely administrative or clerical in nature" (Dkt. No. 87, at 14). Furthermore, he contends that Ms. DePriest oversaw the real estate office and other non-political responsibilities when she was employed as chief deputy, facts that Ms. DePriest admits. On the other hand, Mr. Milligan assigned to Mr. Harris many duties, including some that Ms. DePriest previously had, but also including many additional duties that involved loyalty, trust, and political responsibilities. Based on these facts, the Court finds that Mr. Milligan has articulated a legitimate, nondiscriminatory reason for not retaining Ms. DePriest as chief deputy.

Once an employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to the plaintiff employee to prove that the reasons were "not [the] true reasons, but were pretext for discrimination." *Tex. Dep't of Comm. Affairs v. Burden*, 450 U.S. 248, 253 (1981). A plaintiff may prove pretext either by discrediting the employer's asserted reason for the adverse employment action or by showing that a prohibited reason—such as gender—more likely motivated the employer. *Torgerson*, 643 F.3d at 1047;

*Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006).  Proving pretext "requires more substantial evidence than is required to make a prima facie case because evidence of pretext is viewed in light of [the employer's] proffered justification."  *Fieror v. CSG Systems, Inc.*, 759 F.3d 874, 878 (8th Cir. 2014).

In arguing that Mr. Milligan's proffered reason is a pretext for discrimination, Ms. DePriest "disputes that [the chief deputy position] was a policy level position which can establish pretext" (Dkt. No. 94, at 18).  Ms. DePriest also states that Mr. Harris was less qualified than she was.  This Court has already concluded, "based on the record as a whole, that the chief deputy position was a position of trust and that, under Mr. Milligan, it became a policy-making position" (Dkt. No. 75, at 8).  Ms. DePriest has offered no record evidence to discredit Mr. Milligan's reason for not retaining her—his changing the chief deputy's responsibilities and the trust and loyalty of Mr. Harris.  Although Ms. DePriest contends that Mr. Milligan was less qualified than she to complete the duties she had as chief deputy, she presents no record evidence to support this contention.  Further, she does not dispute that Mr. Harris performs additional responsibilities as chief deputy that she did not perform, and Ms. DePriest has not argued that Mr. Harris lacks qualifications for these new responsibilities.

Ms. DePriest has presented no record evidence to indicate that Mr. Milligan was more likely motivated by gender when he made the decision not to retain her.  The only record evidence that Ms. DePriest has offered is the fact that she was replaced by a man, Mr. Harris.  Without more and considering the record as a whole, this is insufficient evidence of gender discrimination to prove pretext and survive summary judgment on this claim. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) ( "Without more ... the fact that Nelson was younger than Pottenger does not create a triable issue of pretext."); *Dunaway v. Int'l Bhd. of*

*Teamsters,* 310 F.3d 758, 767 (D.C.Cir. 2002) ("The Teamsters' decision to replace her with a younger woman is insufficient for a jury to conclude that she lost out *because of [her] age.*" (quotation marks omitted)); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) ("While Cianci also points to her replacement by a male as evidence of gender discrimination, this is simply insufficient to demonstrate that Cianci's gender motivated the decision to terminate her."). Accordingly, the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claim that Mr. Milligan discriminated against her on the basis of gender when he decided not to retain her as chief deputy.

Ms. DePriest suggests in her third amended complaint that she should have been allowed an opportunity in January 2011 to take another position within the office. She points to no policy or record evidence in support of this allegation, and the Court rejects it.

As to Ms. DePriest's claim that Mr. Milligan failed to hire her for the electronic records manager position in June 2011 because of her gender, the Court finds that Ms. DePriest has failed to establish a *prima facie* case of discrimination. "To establish a prima facie case of discriminatory failure to hire, [a plaintiff] must prove [in part that] . . . he applied and was qualified for a job for which the employer was seeking applicants . . . ." *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012).

Here, it is undisputed that Ms. DePriest did not apply for the electronic records manager position in 2011. Ms. DePriest's third amended complaint alleges that the position was not posted (Dkt. No. 20, ¶ 23). In support of his motion for summary judgment, Mr. Milligan submitted an affidavit of Christy Peterson, the personnel manager for Saline County. Ms. Peterson states that the electronic records position was posted from June 30, 2011, through July

7, 2011 (Dkt. No. 86-5, ¶ 7).  Ms. Peterson's affidavit also includes several exhibits, including a notice of job opening, which states that the job was posted on June 30, 2011, and closed on July 7, 2011; a job description for the electronic records manager position; a list of people who applied for the position; and the application of Gary Underwood, who applied on July 5, 2011, and who ultimately was hired for the position. (*Id.*).

In her response to Mr. Milligan's motion for summary judgment, Ms. DePriest repeats her allegations that the position was not posted, but she offers no record evidence or specific facts to support that claim or to rebut Mr. Milligan's proffered evidence that the job was posted and that she did not apply.  Further, she cites to no policy or record evidence in support of any contention that she should have been considered for the position without the need for an application.  The mere scintilla of evidence she offers is insufficient for Ms. DePriest to overcome summary judgment.  *Smith*, 523 F.3d at 848 ("To establish the existence of a genuine issue of material fact, '[a] plaintiff may not merely point to unsupported self-serving allegations.' The plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.'"); *see also Jackson v. UPS*, 643 F.3d 1081, 1088 (8th Cir. 2011) ("A party's 'unsupported self-serving allegation[]' that her employer's decision was based on retaliation does not establish a genuine issue of material fact.'"); *Buford*, 747 F.2d at 447 ("[P]arties opposing a summary judgment motion may not rest upon the allegations in their pleadings.").  Therefore, the Court grants Mr. Milligan's motion for summary judgment over Ms. DePriest's claims of gender discrimination for the failure to hire her for the electronic records position in 2011.

### c. Qualified Immunity

To the extent Mr. Milligan raises the defense of qualified immunity in response to these claims, for the same reasons the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims of gender discrimination against Mr. Milligan in his official capacity, the Court also grants summary judgment in favor of Mr. Milligan in his individual capacity and need not address qualified immunity.

### 2. Official Capacity Claim For Violating The Right To Remonstrate

In its September 30, 2013, Order, the Court granted Mr. Milligan's first motion for summary judgment as to Ms. DePriest's claim against Mr. Milligan in his individual capacity alleging a violation of her right to remonstrate under the Arkansas Constitution.  Ms. DePriest contends that her termination violates the Arkansas Constitution by infringing on her right to remonstrate.  Ark. Const. art. II, §4 ("The right of the people peaceably to assemble, to consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.").  This claim remains pending as against Mr. Milligan in his official capacity.

The Court declines to decide this state-law claim.  For the Court to determine this issue, it would have to predict how the Arkansas Supreme Court would define the "right to remonstrate" and how that right would apply in an employment discrimination context along with those protections provided by the First Amendment.  These are important and complex legal questions that have not been squarely addressed by an Arkansas appellate court.  The Court is inclined for these reasons not to exercise supplemental jurisdiction over this state-law claim.  Furthermore, the Court in this Order either dismisses or grants summary judgment against Ms. DePriest on all her federal claims, which also counsels against deciding this state-law claim.  Therefore, the

23

Court denies Mr. Milligan's motion for summary judgment as to Ms. DePriest's official capacity claims alleging a violation of her right to remonstrate under the Arkansas Constitution. Nevertheless, the Court dismisses without prejudice these claims because it declines to exercise supplemental jurisdiction over the claims.

### B.    Lawsuit II

In her second lawsuit, Ms. DePriest alleges separate violations of the First Amendment, Title VII, and the ACRA.  Ms. DePriest's second lawsuit against Mr. Milligan stems from her allegations that he failed to hire her for the electronic filing coordinator and real estate clerk positions because she filed lawsuits against him alleging gender discrimination.

### 1.    Claims Of Retaliation Under The First Amendment

The First Amendment prevents the government from retaliating against a public employee based on the employee's speech or associations.  *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).  For an employee to state a retaliation claim under the First Amendment, "he must show that his conduct was constitutionally protected and that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's action which resulted in dismissal."  *Id.* (quoting *Green v. St. Louis Hous. Auth.*, 911 F.2d 65, 70 (8th Cir. 1990)).  "Whether the protected conduct was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law."  *Id.*

The Eighth Circuit has applied two different tests for First Amendment retaliation claims. *Compare Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 657-58 (8th Cir. 2007) (applying a burden shifting analysis according to *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)), *with Morris*, 512 F.3d at 1018-19 (using a "three-step burden-shifting test"

24

akin to that in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *but see Davison*, 490 F.3d at 663 (Colloton, concurring in part, dissenting in part) (stating that under these tests, a plaintiff in a case involving a retaliation claim under the First Amendment may survive a motion for summary judgment through proof of direct evidence of retaliation under *Mt. Healthy* or through the *McDonnell Douglas* burden shifting analysis).

Under the *Mt. Healthy* analysis, when a plaintiff presents sufficient evidence showing an inference of retaliatory motive, the burden shifts to the employer to demonstrate that the employer would have taken the same action regardless of the protected conduct. *See Davison*, 490 F.3d at 657-58.  Under the *McDonnell Douglas* analysis, however, courts apply a three-step burden-shifting analysis in which the "public employee must [first] show that he suffered an adverse employment action that was causally connected to his participation in a protected activity." *Id.* (citing *Duffy v. McPhillips*, 276 F.3d 988, 991 (8th Cir. 2002)).  If the employee satisfies this initial burden, the employer then has the burden "to show a legitimate, nondiscriminatory reason for his or her actions." *Id.*  If the employer meets its burden, the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation." *Id.*  The third step of showing pretext "is harder to overcome than the prima facie case because evidence of pretext is viewed in the light of the employer's justification." *Id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)).

For purposes of this Order only, the Court assumes that Ms. DePriest has stated a *prima facie* case of First Amendment retaliation.  Nonetheless, as explained below, the Court finds that Ms. DePriest's claims of First Amendment retaliation fail under both the *Mt. Healthy* and the *McDonnell Douglas* burden-shifting tests.

Mr. Milligan states that the positions open in the Circuit Clerk's office in August 2013 were filled by current employees who were qualified for the positions and trained to use the new computer programs that Mr. Milligan implemented.  Furthermore, Mr. Milligan states that Ms. DePriest did not have the training for the new computer programs, and Ms. DePriest admits this fact.  The Court finds that, under *Mt. Healthy*, Mr. Milligan has demonstrated that he would have taken the same action—failing to hire Ms. DePriest for the available 2013 positions—regardless of whether or not Ms. DePriest had filed a lawsuit against him because, unlike those people hired, she was not trained to operate the new computer programs.  Ms. DePriest contends that "she knows how to run the entire office" and that she "could easily get through the computer training" (Dkt. No. 94, at 16).  Yet she admits that she was not trained for the programs when she applied for these jobs, and she has presented no record evidence of how her knowledge of how to run the office correlates to the specific duties of the electronic filing coordinator and real estate clerk positions.

As to the *McDonnell Douglas* analysis, the Court finds that Mr. Milligan has stated a legitimate, nondiscriminatory reason for not hiring Ms. DePriest for the electronic filing coordinator and real estate clerk positions—again, that Ms. DePriest, unlike the individuals who were hired, was not trained to operate the new computer programs.  In arguing that this reason is a pretext for discrimination, Ms. DePriest contends that "Mr. Milligan has repeatedly hired unqualified personnel who had to be trained"; that "[h]e has repeatedly said that he would not hire her under any circumstances, regardless of her qualifications"; and that "[h]e acknowledged that it was due to her association with Luther Sutter, who has sued him on First Amendment and discrimination grounds repeatedly" (Dkt. No. 94, at 16).

The Court finds no support in the record evidence for Ms. DePriest's contention that Mr. Milligan has repeatedly hired unqualified personnel who had to be trained. Further, bald assertions regarding her own seniority and experience are insufficient to support an inference of pretext. *See Rose-Maston v. NME Hospitals, Inc*., 133 F.3d 1104, 1109 (8th Cir. 1998) (concluding that "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *Palesch v. Missouri Com'n on Human Rights*, 233 F.3d 560, 570 (8th Cir. 200) (determining that plaintiff's general allegations and unsubstantiated opinion testimony were insufficient to raise a material fact issue as to pretext). Moreover, merely disputing Mr. Milligan's reasons is insufficient; Ms. DePriest "must show 'both that the reason was false, and that discrimination was the real reason.'" *Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir. 2000).

The Court acknowledges that Mr. Milligan did state in his November 2012 deposition in response to certain questions that he would not hire Ms. DePriest even if she applied for a position and regardless of her qualifications. Yet, in other parts of that same deposition and in response to other questions, Mr. Milligan stated that he would make this same decision regardless of whether Ms. DePriest had filed a lawsuit against him. Further, Mr. Milligan's deposition occurred in November 2012, prior to Ms. DePriest's actually applying for any job in his administration and prior to him selecting Ms. DePriest for an interview from a rather large applicant pool, interviewing her, and considering her for the electronic filing coordinator position. It also appears undisputed that Ms. DePriest posted on Facebook sometime in late 2010 or early 2011 that she would not want to work for Mr. Milligan and that Mr. Milligan was aware of this information. Considering all of these record facts, and guided by the *Mt. Healthy* and *McDonnell Douglas* analyses, the Court determines that Ms. DePriest fails to rebut adequately

the proffered justification for Mr. Milligan's not hiring Ms. DePriest in August 2013—that she was not as qualified as the candidates chosen for the positions due to her lack of training in the new computer programs.

To the extent that Ms. DePriest attempts to state a new claim for discrimination based on her "association with Luther Sutter" in her response to Mr. Milligan's motion for summary judgment (Dkt. No. 94, at 16), such a claim is not properly before the Court, and the Court will not address it here.  Therefore, the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's First Amendment retaliation claims for failing to hire her for the electronic filing coordinator and real estate clerk positions.

The Court notes that Ms. DePriest also claims that Mr. Milligan violated her right to remonstrate under the Arkansas Constitution and under the ACRA.  The Court dismisses these claims without prejudice for the same reasons it dismisses her previous right to remonstrate claims as set out above and in this Court's September 30, 2013, Order (*infra* § III.A.2.; Dkt. No. 75, at 11-12).

### 2.       Claims Of Retaliation Under Title VII, §1983, And The ACRA

Ms. DePriest alleges that Mr. Milligan "refused to hire [her] in 2013 because she filed a lawsuit alleging gender discrimination" (Case No. 4:14-cv-0037, Dkt. No. 2, ¶ 15).  Courts generally apply the same analytical framework to retaliation claims brought under Title VII, § 1983, and the ACRA.  *See Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 716 (8th Cir. 2012).  At base, these laws prohibit an employer from discriminating against an employee or applicant for employment "because he has made a charge" of discrimination against the employer.  42 U.S.C. § 2000e-3(a); *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011); *see also* Ark. Code Ann. § 16-123-108(a).  The *McDonnell Douglas* analytical framework applies to

retaliation claims.  *Tyler*, 628 F.3d at 985.  To show a *prima facie* case of retaliation, a plaintiff generally must show that "'(1) the plaintiff engaged in protected conduct, including opposition to an action prohibited by [antidiscrimination laws]; (2) [she] was subjected to an adverse employment action[;] and (3) there is a causal nexus between the protected conduct and the adverse action.'" *Id.* (quoting *Lewis v. Heartland Inns of Am., LLC*, 591 F.3d 1033, 1042 (8th Cir.2010)).  In Title VII retaliation cases, now the plaintiff must prove that her protected activity was the "but-for" cause of the challenged employment action.  *Musolf v. J.C. Penney Co.*, − F.3d −, 2014 WL 6845105, at *3 (8th Cir. 2014).

The Court finds that Ms. DePriest has failed to show a *prima facie* case of retaliation under Title VII's heightened but-for causation and even under any lower standard of causation requiring proof only that the illegitimate reason more likely than not motivated the adverse employment action.  Ms. DePriest has presented no record evidence that shows her filing gender discrimination lawsuits against Mr. Milligan was the determinative, much less the but-for, factor in Mr. Milligan's decisions not to hire her for the electronic filing coordinator and real estate clerk positions.  Her claim of retaliation for filing gender discrimination lawsuits fails under the *McDonnell Douglas* analysis, just as her claim of First Amendment retaliation does.  As noted above, the Court determines that Ms. DePriest fails to rebut adequately the proffered justification for Mr. Milligan's not hiring Ms. DePriest in August 2013−that she was not as qualified as the candidates chosen for the positions due to her lack of training in the new computer programs.  Accordingly, the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims of retaliation under Title VII, § 1983, and the ACRA.

The Court notes that, in her second lawsuit against Mr. Milligan, Ms. DePriest purports only to state a claim of retaliation under Title VII and does not allege gender discrimination

against Mr. Milligan for failing to hire her for the electronic filing coordinator and real estate clerk positions (Case No. 4:14-cv-0037, Dkt. No. 2, ¶ 15). *See Tyler*, 628 F.3d at 989 (noting the distinction between discrimination based on retaliation and sex discrimination).  Nonetheless, Mr. Milligan's second motion for summary judgment argues that his decisions not to hire Ms. DePriest in August 2013 do not constitute gender discrimination.  To the extent that Ms. DePriest's second lawsuit can be read to include such gender discrimination claims, the Court grants Mr. Milligan's motion for summary judgment because the chosen candidates were females and, as stated above, Ms. DePriest has failed to present any record evidence that Mr. Milligan's stated reasons for not hiring her are a pretext for discrimination.

### 3.     Qualified Immunity

To the extent Mr. Milligan raises the defense of qualified immunity in response to these claims, for the same reasons the Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims of retaliation under the First Amendment and Title VII, § 1983, and the ACRA against Mr. Milligan in his official capacity, the Court also grants summary judgment in favor of Mr. Milligan in his individual capacity and need not address qualified immunity.

### IV.     Conclusion

For the foregoing reasons, the Court grants Mr. Milligan's second motion for summary judgment (Dkt. No. 85) as to Ms. DePriest's claims of gender discrimination under § 1983, Title VII, the ACRA, and the GERA for non-retention as chief deputy.  The Court grants Mr. Milligan's motion for summary judgment as to any discrimination or retaliation claim premised on the allegation that Ms. DePriest should have been allowed the opportunity to take another position for which she did not apply.  Although the Court denies Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims alleging a violation of her right to remonstrate

under the Arkansas Constitution and the ACRA (Dkt. No. 85), the Court declines to exercise supplemental jurisdiction over and, therefore, dismisses without prejudice those claims.[2]   The Court grants Mr. Milligan's motion for summary judgment as to Ms. DePriest's claims alleging retaliation under the First Amendment and Title VII, § 1983, and the ACRA for failing to hire her for the electronic filing coordinator and real estate clerk positions.  The Court denies as moot Mr. Milligan's motion for extension of time to file remaining pre-trial documents (Dkt. No. 99).

SO ORDERED this the 12th day of January, 2015.

_____
Kristine G. Baker
United States District Judge

---

[2]  28 U.S.C. § 1367(d) provides:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

The United States Supreme Court in *Jinks v. Richland County,* 538 U.S. 456 (2003), held that the provision of 28 U.S.C. § 1367(d), which tolls state statutes of limitations while an original lawsuit is pending in federal court, applies to claims against local governmental entities.